UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.H., a minor, by and through her Next Friend, SAVANNA COBB, B.H., a minor, by and through his Next Friend, NICOLE SMITH, CAITLIN DICKERSON and BRENDA PARRISH, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:14-CV-2069 |
| ST. LOUIS COUNTY, MISSOURI, JON BELMAR, *in his individual capacity*, and HERBERT BERNSEN, *in his individual capacity*, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## PLAINTIFFS' COMPLAINT

COMES NOW Plaintiffs A.H., B.H., Caitlin Dickerson and Brenda Parrish (hereinafter the "Plaintiffs"), by and through their attorneys, and for their Complaint against Defendant St. Louis County, Missouri (hereinafter "Defendant St. Louis County"), Defendant Jon Belmar (hereinafter "Defendant Belmar") and Defendant Herbert Bernsen (hereinafter "Defendant Bernsen") and respectfully states to this Honorable Court the following:

1. This is a civil action arising under 42 U.S.C. § 1983 and common law avenues of recovery for deprivations of Plaintiffs' rights and for state law claims against all Defendants.

2. Plaintiffs sue Defendant Belmar in his individual capacity.

3. Plaintiffs sue Defendant Bernsen in his individual capacity.

4. Plaintiff A.H. is a minor and daughter of Jereme M. Hartwig ("Decedent Hartwig") and A.H.'s natural mother is Savanna Cobb.

5. Plaintiff B.H. is a minor and son of Decedent Hartwig and B.H.'s natural mother is

Nicole Smith.

6. Plaintiff Caitlin Dickerson is the daughter of Decedent Hartwig.

7. Plaintiff Brenda Parrish is the mother of Decedent Hartwig.

8. Plaintiffs A.H., B.H., Caitlin Dickerson and Brenda Parrish bring this suit for the injuries sustained by Decedent Hartwig, who is now deceased, as a result of the Constitutional violations as alleged herein[1].

## JURISDICTION

9. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1341(3).

10. The supplemental jurisdiction of this Court to hear and decide claims arising out of state law is invoked pursuant to 28 U.S.C. § 1367.

## VENUE

11. Venue is proper under 28 U.S.C. § 1391(b).

12. Defendant St. Louis County is a political subdivision of the State of Missouri acting under color of State law, and is a person for purposes of a 42 U.S.C. § 1983 action of damages.

13. Defendant Belmar, at all times relevant herein, was a St. Louis County Chief of Police working under the direction and control of Defendant St. Louis County.

14. Defendant Bernsen, at all times relevant herein, was the Director of the St. Louis County Department of Justice Services working under the direction and control of Defendant St. Louis County.

## COLOR OF STATE LAW

15. At all relevant times, Defendant Belmar acted under color of state law.

16. Particularly, Defendant Belmar acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

---

[1] Andrews v. Neer, 253 F.3d 1052, 1056-57 (8th Cir. 2001).

17. At all relevant times, Defendant Bernsen acted under color of state law.

18. Particularly, Defendant Bernsen acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

**Waiver of Sovereign Immunity**

19. Upon information and belief, at the relevant time, Defendant St. Louis County had purchased and had in effect a policy of insurance to insure itself against claims or causes of action for damages caused by city employees engaged in government functions, including torts as described herein.

20. The purchase of that insurance constitutes a waiver of sovereign immunity by Defendant St. Louis County [2].

21. Under 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendant St. Louis County.

**FACTUAL BACKGROUND**

22. On February 5, 2013, Decedent Hartwig was incarcerated in the St. Louis County Jail located at 100 S. Central Ave., St. Louis, MO 63105.

23. On February 5, 2013, Decedent Hartwig was incarcerated on a probation violation relating to his criminal non-support case.

24. On February 5, 2013, Decedent Hartwig hung himself inside of his cell by using a bed sheet.

25. On February 5, 2013, Paramedics attempted to resuscitate Decedent Hartwig and Decedent Hartwig was transported to St. Mary's Hospital.

26. As a result of Decedent Hartwig's hanging, he suffered cardiac arrest, brain, kidney and liver damage and later died from his suicidal hanging.

---

[2] RSMo. § 71.180 and/or § 537.610.

27. One to two weeks prior to Decedent Hartwig's hanging, there was an incident inside the St. Louis County Jail where Decedent Hartwig caused harm to himself by hitting himself over the head with a telephone, whereas stitches were required to treat the self-inflicted head injury.

28. As a result of the self-inflicted head injury incident, Decedent Hartwig was placed on Precautionary Suicide Watch and was on Precautionary Suicide Watch on February 5, 2013, when Decedent Hartwig hung himself inside of his cell by using a bed sheet.

29. Decedent Hartwig was confined under no suicide preventive measures, in a cell that contained known instrumentalities for suicide, such as clothing and sheets, and various means and anchor points from which to tie and suspend those items.

30. On February 5, 2013, prior to hanging himself, Decedent Hartwig made six (6) telephone calls from inside the St. Louis County Jail.

31. On February 5, 2013, the six (6) telephone calls made by Decedent Hartwig from inside the St. Louis County Jail were more monitored by corrections officers and/or staff of St. Louis County Department of Justice Services.

32. On February 5, 2013, the six (6) telephone calls made by Decedent Hartwig from inside the St. Louis County Jail were recorded.

33. On February 5, 2013, Decedent Hartwig made one phone call to his mother, Plaintiff Brenda Parrish.

34. On February 5, 2013, in the phone call with Plaintiff Brenda Parrish, Plaintiff Brenda Parrish stated to Decedent Hartwig that she would see him on Thursday for court and Decedent Hartwig stated to Plaintiff Brenda Parrish to not bother coming because he would not be there.

35. As Decedent Hartwig was incarcerated in the St. Louis County Jail Decedent

Hartwig's statement to his mother, Plaintiff Brenda Parrish, that he would not be in court, was affirmatively stating that he was going to kill himself.

36. All phone calls with Decedent Hartwig while in the St. Louis County Jail were recorded and monitored by Defendant St. Louis County.

37. After investigation, the Investigation Report noted, "it appears that J. Hartwig had been considering suicide prior to the incident."

## COUNT I
## VIOLATION OF CIVIL RIGHTS
## 42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT
## AGAINST DEFENDANT JON BELMAR AND DEFENDANT HERBERT BERNSEN
## FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES
## AND ATTORNEY'S FEES

38. Plaintiffs re-allege all of the preceding paragraphs as if set forth fully herein.

39. At all relevant times, Decedent Hartwig had a constitutionally protected right under the Fourteenth Amendment to the U.S. Constitution to receive needed care while in the St. Louis County Jail, and to have his mental health issues timely and properly assessed and treated.

40. Defendant Bernsen deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in the St. Louis County Jail, including Decedent Hartwig, in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering and death.

41. Defendant Belmar deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in the St. Louis County Jail, including Decedent Hartwig, in need of mental health treatment, and exhibited deliberate and callous indifference to serious psychological and mental health needs, by denying access to intensive and structured mental health care, treatment and observation necessary to treat serious mental health needs and prevent suffering

and death.

42. Defendant Bernsen was well aware that there were inmates confined in the St. Louis County Jail who suffered from severe mental health needs, including Decedent Hartwig, and were at risk of suicide.

43. Defendant Belmar was well aware that there were inmates confined in the St. Louis County Jail who suffered from severe mental health needs, including Decedent Hartwig, and were at risk of suicide.

44. Despite Defendant Bernsen's knowledge, Defendant Bernsen intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates, including Decedent Hartwig, and failed to regularly monitor their mental health care needs.

45. Despite Defendant Belmar's knowledge, Defendant Belmar intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates, including Decedent Hartwig, and failed to regularly monitor their mental health care needs.

46. Defendant Bernsen knew at all relevant times that there was a substantial risk that mentally ill inmates, including Decedent Hartwig, left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates, including Decedent Hartwig, at risk were provided the means to accomplish that end.

47. Defendant Belmar knew at all relevant times that there was a substantial risk that mentally ill inmates, including Decedent Hartwig, left substantially untreated, would attempt suicide, that such suicides were reasonably foreseeable, that the threat of this action was imminent and immediate, and that inmates, including Decedent Hartwig, at risk were provided the means to accomplish that end.

48. Defendant Bernsen deliberately disregarded the immediate and serious threat to

inmates' mental health and well-being, including Decedent Hartwig, and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat their serious mental illness, in that:

    a.    with full knowledge of prior suicide attempts, and that suicides were reasonably foreseeable, Defendant Bernsen simply failed to provide needed care and attention;

    b.    with full knowledge that inmates, including Decedent Hartwig, had expressed thoughts of suicide and had made several suicide efforts, Defendant Bernsen failed to consistently have such inmates monitored or observed on a regular basis;

    c.    with full knowledge of inmates, including Decedent Hartwig, with histories of prior suicide attempts, it was incumbent on Defendant Bernsen to take some action to provide such inmates with close suicide observation and psychiatric care; and

    d.    with full knowledge of inmates, including Decedent Hartwig, with histories of prior suicide attempts, Defendant Bernsen's actions in failing to provide close observation and adequate psychiatric care by trained mental health professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

49. Defendant Belmar deliberately disregarded the immediate and serious threat to inmates' mental health and well-being, including Decedent Hartwig, and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent mental health care to treat their serious mental illness, in that:

    a.    with full knowledge of prior suicide attempts, and that suicides were

reasonably foreseeable, Defendant Belmar simply failed to provide needed care and attention;

      b.    with full knowledge that inmates, including Decedent Hartwig, had expressed thoughts of suicide and had made several suicide efforts, Defendant Belmar failed to consistently have such inmates monitored or observed on a regular basis;

      c.    with full knowledge of inmates, including Decedent Hartwig, with histories of prior suicide attempts, it was incumbent on Defendant Belmar to take some action to provide such inmates with close suicide observation and psychiatric care; and

      d.    with full knowledge of inmates, including Decedent Hartwig, with histories of prior suicide attempts, Defendant Belmar's actions in failing to provide close observation and adequate psychiatric care by trained mental health professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

50.    In light of the aforementioned, Decedent Hartwig suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Bernsen and Defendant Bernsen reacted to this risk in an objectively and subjectively unreasonable manner.

51.    In light of the aforementioned, Decedent Hartwig suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant Belmar and Defendant Belmar reacted to this risk in an objectively and subjectively unreasonable manner.

52.    Defendant Bernsen's failures, as alleged above, were the cause of Decedent Hartwig's suicide.

53.    Defendant Belmar's failures, as alleged above, were the cause of Decedent

Hartwig's suicide.

54. As a result of Defendant Bernsen's disregard of and indifference to Decedent Hartwig's constitutionally protected right to be provided with proper care, to be safe and free from harm, Decedent Hartwig's medical needs were ignored, he was instead subjected to ridicule and inattention.

55. As a result of Defendant Belmar's disregard of and indifference to Decedent Hartwig's constitutionally protected right to be provided with proper care, to be safe and free from harm, Decedent Hartwig's medical needs were ignored, he was instead subjected to ridicule and inattention.

56. As a direct and proximate result of Defendant Bernsen's deliberate indifference to Decedent Hartwig's serious mental health needs, Decedent Hartwig committed suicide by hanging himself in his cell on February 5, 2013.

57. As a direct and proximate result of Defendant Belmar's deliberate indifference to Decedent Hartwig's serious mental health needs, Decedent Hartwig committed suicide by hanging himself in his cell on February 5, 2013.

**Compensatory Damages**

58. Under 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendant Bernsen in his individual capacity.

59. Under 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendant Belmar in his individual capacity.

**Punitive Damages**

60. Defendant Bernsen's actions were:

    a. Reckless;

    b. Showed callous indifference toward the rights of Decedent Hartwig; and

  c. Were taken in the face of a perceived risk that the actions would violate federal law.

 61. Defendant Belmar's actions were:

  a. Reckless;

  b. Showed callous indifference toward the rights of Decedent Hartwig; and

  c. Were taken in the face of a perceived risk that the actions would violate federal law.

 62. Plaintiffs are entitled to an award of punitive damages against Defendant Bernsen in his individual capacity, in order to punish him and to deter others.

 63. Plaintiffs are entitled to an award of punitive damages against Defendant Belmar in his individual capacity, in order to punish him and to deter others.

### Attorney's Fees

 64. Under 42 U.S.C. § 1988, if Plaintiffs are the prevailing parties in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

 WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. § 1983 and 1988 against Defendant Bernsen in his individual capacity and Defendant Belmar in his individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiffs pray for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

### COUNT II
### ADA AND REHABILITATION ACT OF 1973
### 42 U.S.C. § 12101 *ET SEQ*. AND 29 U.S.C. § 701 *ET SEQ*.
### AGAINST DEFENDANT ST. LOUIS COUNTY, MISSOURI
### FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES
### AND ATTORNEY'S FEES

 65. Plaintiffs re-allege all of the preceding paragraphs as if set forth fully herein.

66. This Count is a claim for disability discrimination against Defendant St. Louis County under 29 U.S.C. § 701 *et seq.*, the "Rehabilitation Act of 1973" and for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (hereinafter the "ADA") which provides in pertinent that:

> "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

67. Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency. 28 C.F.R. § 39.130.

68. Decedent Hartwig was disabled as defined by 42 U.S.C. § 12102 and a "qualified individual" as defined by 42 U.S.C. § 12131(2), as he suffered from depression.

69. Defendant St. Louis County is a public entity in charge of the St. Louis County Jail that has violated Title II of the ADA.

70. Defendant St. Louis County owed Decedent Hartwig a non-delegable duty to ensure that his well-being and safety would not be compromised as a result of discrimination based on his disability and thus, Defendant St. Louis County is vicariously liable for the actions of any and all persons or entities Defendant St. Louis County designated to care for Decedent Hartwig.

71. Defendant St. Louis County's agents and employees were authorized to act for

Defendant St. Louis County when they committed the ADA violations alleged herein.

72. Defendant St. Louis County's agents and employees accepted the undertaking of acting on behalf of Defendant St. Louis County when they committed the ADA violations alleged herein.

73. Defendant St. Louis County had control over his agents and employees when they committed the ADA violations alleged herein.

74. The ADA violations alleged herein and committed by Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, were done while acting within the course and scope of their employ and/or agency with Defendant St. Louis County.

75. Decedent Hartwig's need for reasonable accommodations was obvious.

76. Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, knew and/or should have known of Decedent Hartwig's need for reasonable accommodations.

77. Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, acted intentionally and/or with deliberate indifference to Decedent Hartwig's need for reasonable accommodations as follows:

   a. Inmates at the St. Louis County Jail were entitled to interact with one another, form friendships, sing, play games, visit, chat, and move at liberty within set bounds, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

   b. Inmates at the St. Louis County Jail were entitled to enjoy physical comforts, like games, books, radios, access to canteen, frequent showers, visits, and phone calls, subject only to administrative and disciplinary needs. Persons with disabilities like that

suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

  c. Inmates at the St. Louis County Jail were entitled to enjoy educational facilities, including a library, writing materials, study aids, and educational programs, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

  d. Inmates at the St. Louis County Jail were entitled to enjoy religious activities, including chapel, study groups, religious materials, icons and observances, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

  e. Inmates at the St. Louis County Jail were entitled to a safe environment, free of known hazards, with adequate sanitation, and removal of traps and obstructions. Persons with disabilities such as those suffered by Decedent Hartwig were exposed to a range of hazards, like fixtures that could support a means of hanging, that endangered life and safety;

  f. Inmates at the St. Louis County Jail were entitled to receive care and treatment that was responsive to their particular health need, including testing, diagnosis, surgery, therapy, and monitoring. Persons who suffered disabilities such as those suffered by Decedent Hartwig received only medication designed to keep them restrained and quiet; and

  g. Inmates at the St. Louis County Jail were entitled to receive security monitoring to protect them from violence at the hands of other inmates and staff. Persons who suffered disabilities such as those suffered by Decedent Hartwig were known to be subject to violence at their own hand and yet received infrequent security monitoring and

inadequate protection.

78. As a direct and proximate result of the refusal and failure of Defendant St. Louis County and its agents and employees charged with caring for Decedent Hartwig, to provide him with accommodations for his disability, the satisfaction of common needs necessary to a decent life, he suffered the agony of prolonged isolation, loneliness, and despair and was thus driven to suicide.

### Compensatory Damages

79. Under 42 U.S.C. § 12101 et seq. Plaintiffs are entitled to an award of compensatory damages against St. Louis County.

### Punitive Damages

80. Defendant St. Louis County and its agents and employees' actions were:

   a. Were willful and wanton;

   b. Showed callous indifference toward the rights of Decedent Hartwig; and

   c. Were taken in the face of a perceived risk that the actions would violate federal law.

81. Plaintiffs are entitled to an award of punitive damages against Defendant St. Louis County, in order to punish it and to deter others.

### Attorney's Fees

82. Under 42 U.S.C. § 12205, if Plaintiffs are the prevailing parties in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. § 12101 et seq. against Defendant St. Louis County for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and

Plaintiffs pray for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 12101 et seq.

### SUPPLEMENTAL STATE CLAIM

### COUNT III
### WRONGFUL DEATH
### AGAINST DEFENDANT ST. LOUIS COUNTY, DEFENDANT JON BELMAR AND DEFENDANT HERBERT BERNSEN
### FOR COMPENSATORY DAMAGES

83. Plaintiffs re-allege all of the preceding paragraphs as if set forth fully herein.

84. Plaintiffs A.H., B.H., Caitlin Dickerson and Brenda Parrish bring this wrongful death action as the surviving natural children and natural mother of Decedent Hartwig pursuant to R.S.Mo. § 537.080(1), the Missouri wrongful death statute.

85. Defendant St. Louis County, Defendant Bernsen and Defendant Belmar owed Decedent Hartwig a non-delegable duty to use reasonable care to ensure her safety.

86. Defendant St. Louis County, Defendant Bernsen and Defendant Belmar failed to perform their duty of using reasonable care to ensure Decedent Hartwig's safety.

87. The St. Louis County Jail failed to monitor and treat Decedent Hartwig's mental health condition and needs, including, but not limited to:

    a. failing to provide Decedent Hartwig with daily intensive mental health treatment by a licensed Psychiatrist or Psychologist despite knowledge of his suicidal history and tendencies;

    b. failing to provide Decedent Hartwig with regular mental health treatment despite knowledge of his suicidal history and tendencies;

    c. failing to provide Decedent Hartwig with regular mental health monitoring and observation despite knowledge of his suicidal history and tendencies;

    d. failing to provide Decedent Hartwig with immediate crisis stabilization care

15

despite knowledge of his need for intensive and structured care;

e. failing to adequately respond to Decedent Hartwig's mental health emergencies reported despite knowledge of his suicidal history and tendencies;

f. failing to address Decedent Hartwig's feelings of isolation, rejection, unworthiness, fear, lack of exercise, fresh air, friendship, good diet, and physical well-being; and

g. in the absence of addressing his needs, failing to at least place Decedent Hartwig under adequate suicidal preventive measures necessary to prevent his death, despite knowledge of the risks to suicidal inmates, including Decedent Hartwig, including, but not limited to, the deteriorative effect on mental illnesses, access to instrumentalities for suicide, and the lack of persons to watch over the suicidal inmate.

88. As a direct and proximate result of Defendant St. Louis County, Defendant Bernsen and Defendant Belmar's failure to perform their duty of reasonable care to ensure Decedent Hartwig's safety, Decedent Hartwig suffered and died by suicide.

89. Defendant St. Louis County, Defendant Bernsen and Defendant Belmar were well aware that inmates, including Decedent Hartwig, were not receiving minimally adequate mental health care at St. Louis County Jail.

90. Therefore, it was reasonably foreseeable that harm would befall Decedent Hartwig either directly or indirectly as a result of the actions and omissions of Defendant St. Louis County, Defendant Bernsen and Defendant Belmar.

WHEREFORE, Plaintiffs pray for such sums as are fair and reasonable in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) as actual damages against Defendant St. Louis County, Defendant Bernsen and Defendant Belmar and an additional sum as is fair and reasonable for damages for the aggravating circumstances attending the death of Decedent

Hartwig, together with their costs herein expended plus prejudgment interest.

                Respectfully submitted,

                SCHOTTEL & ASSOCIATES, P.C.

BY: s/*James W. Schottel, Jr.*
        James W. Schottel, Jr.   #51285MO
        906 Olive St., PH
        St. Louis, MO 63101
        (314) 421-0350
        (314) 421-4060 facsimile
        jwsj@schotteljustice.com

        Attorney for Plaintiffs
        A.H.
        B.H.
        Caitlin Dickerson
        Brenda Parrish