UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.H., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-2069 (CEJ) |
| ) | |
| ST. LOUIS COUNTY, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendants St. Louis County, Missouri and Herbert Bernsen to dismiss the claims filed against them pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs have responded in opposition, and the issues are fully briefed.

I.   **Background**

Plaintiffs' decedent, Jereme M. Hartwig, was incarcerated in the St. Louis County jail and committed suicide in his cell on February 5, 2013. Plaintiffs are the decedent's children and mother. At some point during the weeks prior to his suicide, Hartwig struck himself with a telephone, resulting in the need for stitches to his head. After this incident, Hartwig was placed on precautionary suicide watch. The cell in which he was placed contained clothing and sheets, along with anchor points from which to tie and suspend those items. After being placed in the cell, Hartwig hanged himself with a bed sheet. Paramedics and hospital personnel attempted to resuscitate him, but to no avail. On the date of his death, Hartwig had placed a recorded phone call from the jail to his mother, plaintiff Brenda Parrish, and told her to not bother coming to see him in court on Thursday because he would not be there.

The investigation report of his death noted, "it appears that J. Hartwig had been considering suicide prior to the incident." Pls.' Compl. ¶ 37 [Doc. #1].

On December 17, 2014, plaintiffs initiated this action against St. Louis County, Missouri, St. Louis County Chief of Police Jon Belmar, and Herbert Bernsen, the director of the St. Louis County Department of Justice Services. In the complaint, plaintiffs assert claims pursuant to 42 U.S.C. § 1983 (Count I), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (Count II), and a claim of wrongful death (Count III).

II. **Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also id. at 563 (stating the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its

retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

### III. Discussion

#### A. Count I: 42 U.S.C. § 1983 Claim Against Defendant Bernsen

In Count I, plaintiffs allege that defendant Bernsen[1] deliberately disregarded an immediate and serious threat to the mental health and well-being of inmates with a history of suicide attempts, including decedent Hartwig, by denying them access to intensive and structured mental health care, treatment and observation necessary to treat their serious mental health needs and prevent suffering and death. Defendants argue that Count I should be dismissed because (1) Bernsen was not deliberately indifferent to serious medical needs and (2) Bernsen is entitled to qualified immunity.

#### 1. Deliberate Indifference

The Eighth Amendment prohibits officials from acting with deliberate indifference towards an inmate's substantial suicide risk, and the Fourteenth Amendment extends at least as much protection to pretrial detainees. Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003). To prevail on a deliberate indifference claim, a plaintiff must show: (1) the defendant jail official actually knew that the inmate faced a substantial risk of serious harm and (2) failed to respond reasonably to that risk. Id. (citing Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003)). Deliberate indifference is akin to criminal recklessness and requires something more than merely negligent misconduct. Id.

---

1 Counts I and III of the complaint are also brought against chief of police Jon Belmar. The Court granted summary judgment in favor of defendant Belmar in a separate order. [Doc. #35].

Because plaintiffs have sued Bernsen in his individual capacity, plaintiffs must establish that Bernsen personally participated in the constitutional deprivations, as it is "well settled that *respondeat superior* cannot be the basis of liability in a § 1983 action." Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990) (citing Bolin v. Black, 875 F.2d 1343, 1347 (8th Cir. 1989)). Supervisors may incur liability for an Eighth Amendment violation only "when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (citing Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993)). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

In the instant complaint, plaintiff alleges that Bernsen was aware of plaintiff's history of suicide attempts and that plaintiff continued to be at risk for committing suicide. Notwithstanding this knowledge, Bernsen failed to provide mental health treatment and other services to plaintiff to prevent his death. See Coleman, 349 F.3d at 538 (finding that the actual knowledge required for deliberate indifference can be proven through circumstantial evidence and the obviousness of a suicide risk can serve as circumstantial evidence). The Court finds these allegations sufficient to state a claim against Bernsen.

### 2. Qualified Immunity

"Even if an official knows of a risk of suicide, and suicide does occur, the official is entitled to qualified immunity if he could reasonably believe that his response to the risk was not deliberately indifferent (or reckless) to that risk." Gregoire v. Class, 236

F.3d 413, 418 (8th Cir. 2000). "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Dismissal on the basis of qualified immunity "is inappropriate unless it appears beyond doubt [that plaintiffs] can prove no set of facts in support of their constitutional claims which would entitle them to relief." Central Airlines, Inc. v. United States, 138 F.3d 333, 334 (8th Cir. 1998); see also Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995) (stating that qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint").

To overcome Bernsen's assertion of qualified immunity, plaintiffs must show that: "(1) the facts, viewed in the light most favorable to the plaintiffs, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." Baribeau v. City of Minneapolis, 596 F.3d 465, 474 (8th Cir. 2010) (internal quotations and citation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Coleman, 349 F.3d at 538 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

On the date of his death, Hartwig "had a clearly established constitutional right to be protected from the known risks of suicide and to have his serious medical needs attended to." Yellow Horse v. Pennington Cnty., 225 F.3d 923, 927 (8th Cir. 2000). Determining whether Bernsen could have reasonably believed his actions did not

violate Hartwig's Eighth Amendment rights is a "fact specific analysis" that requires plaintiffs to demonstrate deliberate indifference to a known risk of suicide. Id.; Gregoire, 236 F.3d at 417. As set forth above, the facts alleged in the complaint support a plausible claim that Bernsen knew Hartwig was suicidal and his actions in response to that known risk were unreasonable. As such, Bernsen's entitlement to qualified immunity is not clearly established on the face of the complaint. See Weaver, 45 F.3d at 1255. Accordingly, defendants' motion to dismiss Count I against Bernsen will be denied.

### B. Count II: ADA and Rehabilitation Act Claims Against Defendant St. Louis County

With respect to Count II, plaintiffs assert that Hartwig was disabled because he suffered from depression and was in need of reasonable accommodations for his disability. According to the complaint, St. Louis County and the persons charged with caring for Hartwig acted with deliberate indifference to his needs by depriving him of social, educational, recreational, religious and safety benefits and entitlements other inmates experienced at the jail. Hartwig also "could have enjoyed those benefits except for a lack of treatment and adequate supervision." Pls.' Compl., at *12-13 [Doc. #1]. Defendants argue that Count II against St. Louis County should be dismissed because (1) plaintiffs are not the proper parties to bring this claim; and (2) a claim based on medical treatment decisions may not be brought pursuant to either the ADA or the Rehabilitation Act.

The threshold issue is whether Hartwig's claim of disability discrimination survives his death. Absent an expression of contrary intent by Congress, "whether a federal cause of action survives 'is governed by federal common law.'" Kettner v.

Compass Grp. USA, Inc., 570 F. Supp. 2d 1121, 1132 (D. Minn. 2008) (citing Smith v. Dept. of Human Servs., 876 F.2d 832, 834 (10th Cir. 1989)); James v. Home Constr. Co., 621 F.2d 727, 729 (5th Cir. 1980); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1954 (3d ed. 2007).[2] Under federal common law, "only actions for penalties or forfeitures do not survive." Kettner, 570 F. Supp. 2d at 1133 (citing Smith, 876 F.2d at 834-35; Murphy v. Household Fin. Corp., 560 F.2d 206, 208 (6th Cir. 1977); Ex parte Schreiber, 110 U.S. 76, 80 (1884)); see also Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 876 (11th Cir. 1986) ("[U]nder federal common law, a federal cause of action generally survives the death of the plaintiff unless it is an action for penalties."). A remedial statute, in contrast to a penal statute, is generally one which redresses individual wrongs and under which recovery runs directly to the individual. Kettner, 570 F. Supp. 2d at 1133. Thus, in Kettner, the court concluded that because the ADA and Rehabilitation Act are "remedial in nature," the trustee for

---

[2] In contrast, the survivability of plaintiffs' § 1983 claim in Count I is governed by 42 U.S.C. § 1988, which instructs courts to turn to "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction . . . is held, so far as the same is not inconsistent with the Constitution and laws of the United States." § 1988(a). Section 1988(a), however, does not extend to the ADA or Rehabilitation Act claims. E.g., Kettner, 570 F. Supp. 2d at 1128-1132 ("With respect to the applicability of Section 1998(a), the statute itself confines its application to actions under titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights. Title 13 of the Revised Statutes consisted of R.S. §§ 530 to 1093. Likewise, Title 24 consisted of R.S. §§ 1977 to 1001, which are classified to sections 1981 to 1983, 1985 to 1987, and 1989 to 1994 of what is now Title 42 of the U.S. Code. And Title 70 of the Revised Statutes consisted of R.S. §§ 5323 to 5550, the federal criminal code at the time, which is now codified as Title 18. Thus, these annotations clearly explain which federal civil rights are covered by Section 1988(a). None of the above-reference sections of the Revised Statutes corresponds to statutes codifying the ADEA, the ADA, or the Rehabilitation Act . . . . The list of cases to which Section 1988(a), by its very language, applies does not include ADA or Title VII cases.") (internal citations, quotations, and footnotes omitted); Lopez v. Regents of Univ. of Cal., 5 F. Supp. 3d 1106, 1118 (N.D. Cal. 2013) ("Section 1988 is clear—it applies to *specific* claims brought under *specific* provisions—provisions that do not include the more modern civil rights actions of the twentieth century."); see also Fleming v. U.S. Postal Serv. AMF O'Hare, 27 F.3d 259, 262 (7th Cir. 1994) (finding that Title VII and the Rehabilitation Act "are not affected by 42 U.S.C. § 1988(a)"). "[C]ourts that were finding the survival of ADA claims governed by state law have not supported their conclusions 'with any persuasive analysis—or in fact any analysis at all—of the statutory language.'" Flaum v. Gloucester Lanes, Inc., No. 4:13-CV-131, 2015 WL 364603, at *2 (E.D. Va. Jan. 27, 2015). Thus, the Court looks to federal common law with respect to the survivability of Count II, rather than Missouri law.

the decedent's estate was "entitled to all available remedies" under those statutes, except for liquidated and punitive damages.  Id. at 1134.

The plaintiffs in this case do not bring this action as personal representatives, trustees, administrators, or otherwise on behalf of Hartwig's estate.  Instead, plaintiffs bring this action on their own behalf, and they have not shown that they have standing to do so.  See Lorenzo Font v. Francisco, 260 F. Supp. 2d 394, 402 (D.P.R. 2003) ("Despite the broad policy concerns of the ADA, there is no indication that Congress intended to stretch the limits of the standing requirements beyond traditional constitutional doctrine."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (holding that Article III standing requires a showing that (1) plaintiff suffered an injury in fact; (2) the injury is fairly traceable to defendant's actions; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable court ruling).  In the absence of any authority to the contrary, the Court concludes that plaintiffs do not have standing on their own behalf to assert decedent's ADA and Rehabilitation Act claims.[3]  See City of Clarkson Valley v. Mineta, 495 F.3d 567, 569-70 (8th Cir. 2007) (citing Lujan, 504 U.S. at 560-61) (explaining that when standing is challenged, the party invoking federal jurisdiction bears the burden of establishing the requisite elements).  Count II will be dismissed for failure to state a claim.

### C. Count III: Wrongful Death Claim Against Defendants St. Louis County and Bernsen

In Count III, plaintiffs assert a supplemental state claim of wrongful death pursuant to Mo. Rev. Stat. § 537.080, alleging that because the St. Louis County Jail

---

[3] The outcome under Missouri law would be the same.  See Mo. Rev. Stat. § 537.020 (stating that causes of action for personal injuries or death do not abate by reason of the death of any party to the cause of action, but instead survive to the personal representative of the deceased party).

failed to monitor and treat Hartwig's mental health condition, defendants breached their duty to use reasonable care to ensure Hartwig's safety, thereby resulting in his death. Defendants argue that Count III should be dismissed against St. Louis County because it has sovereign immunity. Also, defendants assert that Count III should be dismissed against Bernsen because (1) the doctrine of respondeat superior does not apply; (2) the public duty doctrine protects Bernsen from civil liability for negligence; and (3) Bernsen has official immunity under state law for the policy decisions he makes in running the jail.

### 1. Sovereign Immunity

Missouri law provides that government entities, including St. Louis County, generally are immune from tort liability. Mo. Rev. Stat. § 537.600. A public entity may waive its sovereign immunity, however, by purchasing liability insurance for tort claims other than those specifically exempted by § 537.600. See Mo. Rev. Stat. § 537.610. "[W]hen a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased." Fantasma v. Kansas City, Mo. Bd. of Police Com'rs, 913 S.W.2d 388, 391 (Mo. Ct. App. 1996) (citing State ex rel. Bd. of Trustees v. Russell, 843 S.W.2d 353, 360 (Mo. banc 1992)). "Any waiver of sovereign immunity is to be construed narrowly." Id. Plaintiffs "bear the burden of demonstrating the existence of the insurance and that it covered [their] particular claim," and "must plead with specificity facts demonstrating [their] claim falls within an exception to sovereign immunity." Gregg v. City of Kansas City, 272 S.W.3d 353, 359-60 (Mo. Ct. App. 2008).

In the complaint, plaintiffs allege that "[u]pon information and belief, at the relevant time, [d]efendant St. Louis County had purchased and had in effect a policy of insurance to insure itself against claims or causes of action for damages caused by city employees engaged in government functions, including torts as described herein." Pls.' Compl. ¶ 19 [Doc. #1]. As such, plaintiffs argue that the purchase of that insurance constitutes a waiver of sovereign immunity pursuant to Mo. Rev. Stat. § 537.610. Defendants argue that these allegations are insufficient to establish that St. Louis County has waived its sovereign immunity, because plaintiffs have not specified the applicable insurance policy and the County should not be required to submit an affidavit proving the absence of a basis for plaintiffs' allegation.

At this stage in the pleadings, the Court is required to accept all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Gregg, 272 S.W.3d at 360 (stating that the complaint's allegations that the defendant municipality waived its sovereign immunity through the purchase of liability insurance must be taken as true under the motion to dismiss standard); see also Kunzie v. City of Olivette, 184 S.W.3d 570, 574 (Mo. banc 2006) (finding that plaintiff's allegation that the city maintains liability insurance "to handle the consequence of employment related actions brought against them" sufficient to allege a waiver of sovereign immunity). As such, plaintiffs' allegation that St. Louis County waived its sovereign immunity to plaintiffs' claims by virtue of the purchase of liability insurance is sufficient to allege waiver. White v. Jackson, No. 4:14-CV-1490 (HEA), 2015 WL 1189963, at *6 (E.D. Mo. Mar. 16, 2015).

In their response in opposition to the instant motion, plaintiffs also argue that they have sufficiently pled the four requisite elements to state a claim under the

dangerous condition exception to sovereign immunity. See Hensley v. Jackson Cnty., 227 S.W.3d 491, 496 (Mo. banc 2007) (citing Mo. Rev. Stat. § 537.600.1(2)) (setting forth the four requisite elements to benefit from a statutory waiver of sovereign immunity for the dangerous condition of property). Because plaintiffs have sufficiently pled a waiver of sovereign immunity by purchase of liability insurance pursuant to Mo. Rev. Stat. § 537.610 on the face the complaint, however, the Court need not address that argument at this stage in the proceedings.

### 2. Public Duty Doctrine

Defendants next argue that Bernsen is protected from tort action by the public duty doctrine. Under the public duty doctrine, "a public employee is not liable to an individual for injuries resulting from a breach of duty the employee owes only to the general public." Gregg, 272 S.W.3d at 362 (citing Davis-Bey v. Mo. Dep't of Corr., 944 S.W.2d 294, 298 (Mo. Ct. App. 1997)). A "public duty" is "the 'kind of duty owed to the public at large,' and is the kind of duty that requires the public official to use discretion, including 'professional expertise, training and judgment.'" Id.

In contrast:

A duty is owed to particular individuals for the performance of ministerial duties in which a private individual has a special, direct, and distinctive interest. Such an interest exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of an official's breach of duty. Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions. Finally, it cannot be assumed that a duty is private simply because it is ministerial.

Jungerman v. City of Raytown, 925 S.W.2d 202, 205 (Mo. banc 1996) (internal quotations and citations omitted), abrogated on other grounds by Southers v. City of Farmington, 263 S.W.3d 603 (Mo. banc 2008).

Whether defendant Bernsen owed a duty to decedent Hartwig will depend upon the facts and cannot be determined at this stage of the proceedings. See Teague v. St. Charles Cnty., 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (declining to find the public duty doctrine applied as a defense to plaintiff's negligence claim for prematurity on a motion to dismiss).

### 3. Official Immunity

Defendants further assert that Bernsen has official immunity for the policy decisions he makes in running the St. Louis County Corrections Department. "Under Missouri law, the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." McLean v. Gordon, 548 F.3d 613, 617 (8th Cir. 2008) (quoting James ex rel. James v. Friend, 458 F.3d 726, 731 (8th Cir. 2006)). "Official immunity does not, however, shield officials for liability arising from their negligent performance of ministerial acts or functions." Id. Discretionary acts require "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or pursued." Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. banc 1984) (quoting Jackson v. Wilson, 581 S.W.3d 39, 43 (Mo. Ct. App. 1979)). A ministerial act, in contrast, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." Id.

The analysis of the act in question "must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the

extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." Kanagawa v. State, 685 S.W.2d 831, 836 (Mo. banc 1985). As such, the test for whether an act is "discretionary" or "ministerial" is fact-intensive, and, again, the determination of this issue cannot be made at this stage in the proceedings. See Teague, 708 F. Supp. 2d at 940-41 (declining to find that defendants were entitled to official immunity to plaintiff's negligence claim for prematurity on a motion to dismiss).

### D. Punitive Damages

Lastly, defendants challenge plaintiffs' claims for punitive damages in all counts of the complaint, arguing that there are insufficient facts alleged in the complaint to support any claim for punitive damages. With respect to Count I, [i]n a § 1983 case, both compensatory and punitive damages are available upon proper proof." Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997). "Punitive damages may be assessed in a § 1983 case when a 'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Swipies v. Kofka, 419 F.3d 709, 717 (8th Cir. 2005) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The standard for punitive damages in a § 1983 claim "is subjective and, to prove reckless indifference, requires evidence that the defendant acted 'in the face of a perceived risk that [his or her] actions [would] violate federal law.'" Id. (quoting Kolstad v. Amer. Dental Ass'n, 527 U.S. 526, 536 (1999)).

"[U]nlike compensatory damages, which are mandatory and are awarded as a matter of right once liability is found, punitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct

by the defendant is shown." Rahija, 114 F.3d at 787. Therefore, the "focus, in determining the propriety of punitive damages, is on the intent of the defendant, and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." Id. (internal quotations and citations omitted). This highly factual evidence-based determination of the propriety of punitive damages is premature at this stage in the proceedings. See Banner v. Camden Cnty., Mo., No. 10-4009-CV-C (NKL), 2010 WL 1170516, at *3 (E.D. Mo. Mar. 22, 2010) (denying defendants' motion to dismiss plaintiff's punitive damages claim as premature). Plaintiffs have alleged a sufficient factual basis for their punitive damages claim in Count I to proceed.

In the wrongful death claim in Count III, plaintiffs seek actual damages of $25,000 and "an additional sum as is fair and reasonable for damages for the aggravating circumstances attending the death of [d]ecedent Hartwig." Pls.' Comp., at *16-17 [Doc. #1]. Section 537.090 of the Missouri Revised Statutes provides that in wrongful death cases "the mitigating and aggravating circumstances attending the death may be considered by the trier of facts in assessing damages." Call v. Heard, 925 S.W.2d 840, 849 (Mo. banc 1996). The Missouri Supreme Court has explained that "aggravating circumstance damages in wrongful death cases are the equivalent of punitive damages." Id. (citing Bennett v. Owens-Corning Fiberglas Corp., 896 S.W.2d 464, 466 (Mo. banc 1995)). In Missouri, "punitive damages may be awarded if the defendant 'showed complete indifference to or a conscious disregard for the safety of others.'" Id. (quoting Stojkovic v. Weller, 802 S.W.2d 152, 155 (Mo. banc 1991)).

Similar to Count I, the factual determination of the propriety of punitive damages as claimed against defendant Bernsen is premature at this stage in the proceedings. The facts as alleged for Count III sufficiently state a claim for punitive damages against Bernsen. However, punitive damages against St. Louis County in Count III will not stand. Section 537.610.3 of the Missouri Revised Statutes prohibits an award for punitive or exemplary damages against a public entity within the scope of sections 537.600 to 537.650, which includes St. Louis County. Plaintiffs do not dispute the validity of the application of this statute. As such, the claim for punitive damages in Count III against St. Louis County is dismissed.

\* \* \* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants St. Louis County, Missouri and Herbert Bernsen to dismiss the claims filed against them pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. #31] is **denied in part and granted in part.**

An order of partial dismissal will accompany this Memorandum and Order.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of July, 2015.